UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| NICHOLE BAILEY,) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| ) | |
| FIZZ LLC. d/b/a VENA'S FIZZ HOUSE,) | |
| STEVE CORMAN, AND ) | |
| JOHANNA CORMAN, ) | |
| ) | |
| Defendants) | |

**COMPLAINT AND REQUEST FOR JURY TRIAL**
**AND INJUNCTIVE RELIEF**

Nichole Bailey makes the following complaint against Fizz LLC, d/b/a Vena's Fizz House ("Vena's"), Steve Corman and Johanna Corman for discrimination and retaliation against her after she reported wage and hour violations to them and asked to be paid her overtime pay. Nichole reported to the Cormans what she believed to be violations of law regarding tips and overtime affecting Vena's employees. Because the Cormans benefitted from the nonpayment of overtime wages and the owners taking tips from the employee tip pool, they refused to consider Nichole's persistent pleas that the staff, including herself, were being improperly compensated as employees. Nichole simply wanted to give the defendants an opportunity to correct their conduct; instead, she was taken off the employee schedule, given a pay cut, and told she could work only if she pretended to be an independent contractor, which she told them would be illegal. Their response was to fire her altogether.

**Parties**

1. Plaintiff Nichole Bailey ("Nichole") is a female citizen of the State of Maine, living in the town of Portland, Maine, County of Cumberland.

2. As an employee at Vena's, Nichole's work involved extensive out-of-state contacts, sales, work, and marketing.

3. For example, Nichole assembled Vena's infusion kits, including for a carpet/flooring company from Philadelphia who used the kits as promotional material (@phlcommercial). She also created and made "Smokey Hop's Simple Syrup," which was sold to a bar in the New York metro area (Long Island) called The Black Sheep. In addition, she provided written content on the website and online store, designed for a national market; she provided pictures and correspondence for an International airline magazine on a piece regarding "Switchel"; and she created recipes for local apothecary, Herbal Revolutions, for the Expo East Trade show in New York City.

4. Vena's is a Maine company with a principal place of business in Portland, Maine. Its legal name is Fizz LLC.

5. Vena's is an enterprise engaged in commerce and in the production of goods for commerce. Vena's sells its products both at a store in Portland, Maine, as well as sells its products on the internet to persons across the country on an on-line store. It advertises to a national audience and has a number of out-of-state customers.

6. Vena's accepts credit card payments, advertises via a website available to anyone with an internet connection, maintains social media accounts such as Facebook, and sells its goods across state lines via its website, via its Facebook page at https://www.facebook.com/pg/venasfizzhouse/shop/?ref=page_internal, and via Etsy at https://www.etsy.com/shop/VenasFizzHouse, among others.

7. Vena's employees are engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

8. Vena's makes many sales to out-of-state customers and does not just sell to buyers in Maine.

9. On information and belief, Vena's has $500,000 in sales a year.

10. Steve Corman is a co-owner of Vena's and is a person acting directly in the interest of Vena's with respect to Nichole.

11. Steve Corman is an "employer" as defined by 29 U.S.C. § 203(d).

12. Johanna Corman is a co-owner of Vena's and is a person acting directly in the interest of Vena's with respect to Nichole.

13. Johanna Corman is an "employer" as defined by 29 U.S.C. § 203(d).

14. Both Steve and Johanna Corman were involved in the supervision of Nichole.

15. Both Steve and Johanna Corman have operational control over significant aspects of Vena's day-to-day functions.

### Procedural background

16. This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to Plaintiff by the Maine Human Rights Act, 5 M.R.S. § 4572, and 26 M.R.S. § 833, the Maine Whistleblower Protection Act ("WPA"); as well as federal wage and hour laws under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

17. Plaintiff filed a timely complaint with the Maine Human Rights Commission ("MHRC").

18. Plaintiff exhausted all of her administrative remedies.

19. Plaintiff timely filed this complaint in court.

20. Plaintiff satisfied the requirements of 5 M.R.S. § 4622. Prior to filing this action, the Commission issued a right to sue letter pursuant to 5 M.R.S. § 4612(6) and § 4622(1).

21.     This court has jurisdiction of the federal claims asserted here pursuant to 28 U.S.C.A. §§ 1331 and 1343.  This court has supplemental jurisdiction over the claims in this action arising under the law of the State of Maine pursuant to 28 U.S.C. § 1367.

22.     The unlawful employment practices complained of in this complaint principally occurred, and the employment records relevant to this matter are maintained and administered, within Cumberland County, Maine.  Venue is therefore proper within this District pursuant to Local Rule 3(b).

## Jury demand

23.     Plaintiff demands trial by jury of all claims to the extent allowed by law.

## Factual background

24.     Nichole Bailey began working at Vena's on April 5, 2014, as a part-time soda maker.

25.     By May, she was allowed to run the bar alone, serving sodas and mocktails.

26.     By June 2014, Nichole was working Wednesdays, Saturdays, and Sundays at the request of the Cormans, overseeing the bar and employees on Wednesdays, and training new hires on the soda menu.

27.     Nichole at all times acted at the direction of the Cormans, did not have her own business, and did not meet the definition of an independent contractor under state or federal law. She was treated at all times like an employee.

28.     In February 2015, Nichole became the first full time employee of Vena's.  She helped design the menus.

29.     In March 2015, the Cormans gave Nichole the responsibility of creating an online presence for Vena's and posting something each day about Vena's.

30. In May 2015, Nichole helped formulate a syrup called Smoky Hops that was sold to bars in the area as well as to the New York metro area.

31. In June 2105, Nichole started helping with employee scheduling and being a point of contact for employees. She worked more than 40 hours a week, based on what the Cormans needed her to do.

32. In July 2015, Nichole met with the Cormans to discuss their calculation of tips and the payment of overtime. She believed that both tips and overtime were not being handled as required by law. Steve Corman stated he just estimated tips.

33. A few days later, Steve Corman approached Nichole and told her that he did not pay overtime and that he was going to roll over her hours instead. For the rest of her time at Vena's, Nichole received checks for 80 hours, even if she had worked more.

34. On February 12, 2016, Johanna and Nichole met and Johanna mentioned that Nichole could become the bar manager. Nichole said she could do that but needed to discuss her wages. She told Johanna that she was not getting overtime for hours over 40 a week, and that Steve Corman should not be taking tip money given that he was an owner.

35. Despite this conversation, from February 13 to April 20, 2016, Vena's continued not to pay overtime to Nichole, and Steve Corman continued to take tip money for himself from what should have gone just to the staff.

36. On April 21, the full-time staff met to create a list of priorities and projects that they had all been tasked with by the owners and to create an outline of what needed to be done, who would like to do it and when they should be able to accomplish said tasks.

37. At the meeting, Nichole brought up the concern about overtime and asked if anyone else had ever had this issue. She also said that they should bring up the tip pooling issue

with Steve and Johanna because a majority of the staff worked with Steve and had him take an equal share of tips while on their shift.

38. On April 27, 2016, Nichole attended a staff meeting where staff voiced concerns. Nichole voiced a number of questions about the legality of rolling over hours instead of paying overtime and of owners/management taking money for themselves from the tip pool. At that meeting, a packet of information about the Maine laws on overtime and tips was handed to the Cormans.

39. Nichole was the only employee affected by the defendants' refusal to pay overtime since she was the only employee at that time working more than 40 hours a week.

40. After this meeting, Steve Corman approached Nichole and asked about the tip regulations. Nichole told him it would be best if he and Johanna looked at the information in the packet and then got back to staff on the legal concerns she felt needed to be addressed.

41. On April 29, 2016, Nichole emailed Steve Corman asking for approval of the next week's schedule. Even though she did the scheduling, she needed to have her schedules approved.

42. Steve replied saying he was taking her shift on Saturday night so that he did not have to pay Nichole overtime, since he had learned he could not roll over hours from weeks where she worked more than 40 hours to weeks when she worked less than 40 hours.

43. Also on April 29, Nichole reminded Steve that, if tips are pooled and collected, he the owner could not take money from the pool. Steve replied that he would take the tips from the orders that he took while working alone.

44. Nichole also asked on April 29 to be paid the overtime she was owed. Defendants did not pay that.

45. The very next day after Nichole's email about tips and asking to be paid for her overtime, Steve responded to Nichole's email saying she should not come back to work and that it was not clear she was a good match for the company given her questions about tip pooling and overtime.

46. Steve wrote this message to Nichole on April 30:

> "Nichole, Don't come to work Today or Sunday; we have coverage. I think we all need to take a step back, and think. Think about your role and whether you want to be part of Vena's and whether we are a good match for each other. Reading the email you sent, it doesn't seem as we are."

47. After getting Steve's April 30 email, Nichole called Johanna and asked Johanna to call her back. Instead, Johanna texted her and said:

> "Nichole, I'm sorry that this is happening. I don't have the time, energy to deal right now. I think the best thing is for you to take a couple of days off, think things over and then we can get together and talk and make decisions. Obviously things are not working for any of us right now. Cooler heads will prevail."

In other words, Johanna agreed that Nichole should be taken off the schedule as a result of her emails about tip pooling and overtime.

48. On May 1, both Steve and Johanna texted Nichole about meeting on May 2. Nichole agreed to meet with them.

49. On May 2, Nichole met with Steve and Johanna at Vena's Fizz House, where they stated that they did not have full time work for Nichole anymore and that she was no longer on the schedule.

50. Although she had been fired from her employee position, at this meeting Johanna and Steve did tell Nichole she could do the same work for them as an independent contractor or consultant. They also said that, if she was interested in picking up bar shifts while she was an independent contractor, she could do so.

51. Steve and Johanna said they would, at Nichole's request, send over a contract and job description for their needs of an independent contractor.

52. Nichole did not have her own independent company providing services to other businesses as a consultant, which defendants knew.

53. On May 5, Johanna Corman sent an email to Nichole responding to the issues raised about tip pooling, and announcing that overtime would not be allowed. The email also contained a job description for the "independent contractor" position, making clear that the position would mean taking orders from the defendants and working the hours and pay that they dictated. (Exh. A).

54. On May 18, Nichole told Johanna Corman that she did not think it was right to fire her immediately after raising issues about tip pooling and overtime. She also reported that she did not think the "independent contractor" position was legal because defendants knew Nichole didn't have a separate consulting company, would have no independence, would not set her own projects and would not set her own pay. Johanna responded that she did not know what would make the contract illegal but said Nichole was free to accept it or reject it.

55. On May 20, Johanna Corman emailed that Nichole had only to the end of the day to agree to work as an illegal independent contractor or the offer was gone. She confirmed that Nichole was not an employee any longer and, indeed, Nichole had been taken off the schedule and had had no hours since April 29.

56. Nichole was fired from her position as an employee because she reported what she believed to be violations of law regarding the tips and overtime, two wage and hour issues affecting employees and not independent contractors. She was denied any further work because she refused to engage in what she reported to be illegal work as an "independent contractor", the only kind of work offered to her after she was eliminated as an employee.

57. In retaliation for complaining about the illegal wage issues, Nichole's last check was paid at a rate cut by $1.25 an hour. She received this check on June 1, 2016.

58. Nichole made a complaint to the Maine Department of Labor, which found that Nichole had not been paid the proper rate for overtime for 90 hours of overtime. Vena's was ordered to pay that to Nichole.

59. Nichole still has not been paid back for the retaliatory cut in pay.

60. Because of the illegal conduct by defendants, Nichole reported to defendants what she believed to be illegal and gave defendants an opportunity to correct that conduct. The very day after she emailed defendants about tip pooling and about wanting to be paid overtime due, she was removed from the employee work schedule. The only opportunity she was then offered was as a non-employee contractor, which Nichole reported she could not do because it was also illegal. Rather than correct the illegal conduct, defendants retaliated against Nichole.

## COUNT I

### VIOLATION OF WHISTLEBLOWERS' PROTECTION ACT, 26 M.R.S. § 833(1)(A), AGAINST VENA'S

26. Plaintiff realleges and hereby incorporates the paragraphs set forth above as if set forth in their entirety.

27. Defendant Vena's intentionally discriminated against Nichole with respect to tenure, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment because of previous actions taken by Nichole that are protected under the WPA, in violation of the MHRA, 5 M.R.S. § 4572(1)(A).

28. Nichole was singled out for treatment that non-whistleblowers were not.

29. Nichole reported to defendants what she had reasonable cause to believe were violations of state or federal law. 26 M.R.S. § 833(1)(A).

30. As a result of this report, defendants took action to force her out, absent agreement to join in their illegal activity.

31. As a proximate result of defendants' unlawful conduct alleged herein, Nichole has suffered job loss, lost income, emotional distress, loss of enjoyment of life, inconvenience, and other pecuniary and non-pecuniary losses.

32. Nichole has no plain, adequate or complete remedy at law to fully redress the wrongs alleged, and defendants are likely to perpetrate similar acts on others unless they are enjoined by this Court.

33. Defendants' unlawful conduct alleged herein was intentional.

34. Defendants' unlawful conduct alleged herein was undertaken with malice or with reckless indifference to Nichole's rights.

## COUNT II

### VIOLATION OF WHISTLEBLOWERS' PROTECTION ACT, 26 M.R.S. § 833(1)(D), AGAINST VENA'S

35. Plaintiff realleges and hereby incorporates the paragraphs set forth above as if set forth in their entirety.

36. Nichole, acting in good faith, refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

37. As a proximate result of defendants' unlawful conduct alleged herein, Nichole has suffered job loss, lost income, emotional distress, loss of enjoyment of life, inconvenience, and other pecuniary and non-pecuniary losses.

38. Nichole has no plain, adequate or complete remedy at law to fully redress the wrongs alleged, and defendants are likely to perpetrate similar acts on others unless they are enjoined by this Court.

39. Defendants' unlawful conduct alleged herein was intentional.

40. Defendants' unlawful conduct alleged herein was undertaken with malice or with reckless indifference to Nichole's rights.

41. Nichole's only way to avoid engaging in wage and hour fraud was to refuse to start working as an independent contractor.

## COUNT III

### VIOLATION OF THE FLSA BY ALL DEFENDANTS

42. Plaintiff realleges and hereby incorporates the paragraphs set forth above as if set forth in their entirety.

43. Defendants are all employers as defined by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d).

44. Defendants are subject to the FLSA as a covered enterprise and therefore all Vena's employees are entitled to the protections of the FLSA. *See* 29 U.S.C. § 203(s).

45. In addition, individual Nichole Bailey is a covered employee and is entitled to the protections of the FLSA as an employee engaged in interstate commerce. *See, e.g.,* 29 C.F.R. § 779.110 *et seq.*; 29 U.S.C. § 207(a).

46. Nichole reported what she believed to be violations regarding tip pooling and the payment of overtime. The FLSA covers tip pooling at 29 C.F.R. § 531.54 and § 10.28 and overtime at 29 U.S.C. § 207. State law also requires payment of overtime. 26 M.R.S. § 664.

47. Federal law prohibits owners from retaining any portion of the employees' tips other than for the purpose of a tip credit. 29 C.F.R. § 531.54. State law does also. 26 M.R.S. § 664.

48. The FLSA prohibits employers from discharging or in any other manner discriminating against any employee because such employee has made any complaint about conduct covered by the FLSA. *See, e.g.,* 29 U.S.C. § 218c.

49. Nichole was removed as an employee from the schedule the day immediately after she sent an email about tip pooling and asking to be paid her overtime pay. She was fired in her capacity as an employee.

50. The only work she was thereafter offered was work as an independent contractor but in a form that would have violated the FLSA's ban on misclassification of employees. *See, e.g.,* 29 U.S.C. § 203(e), 203(g).

51. The work Nichole was offered also violated Maine's Employment Standard Defining Employee vs. Independent Contractor.

www.maine.gov/labor/misclass/employment_standard.shtml

52. She was then removed altogether after she reported to defendants that she did not believe the work offered as an independent contractor was legal.

53. Nichole reported the illegal conduct orally as well as in writing to defendants as well as to the Maine Department of Labor.

54. Nichole lost all work with Defendants as a result. Defendants' conduct constituted retaliation under the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Nichole prays that this Court enter an Order providing as follows:

  a. Enter judgment declaring that the Defendants' practices complained of herein are unlawful as alleged;

  b. Grant injunctive relief compelling the Defendants to desist from all unlawful harassment and retaliation;

  c. Order the Defendants to pay Nichole back pay plus compensatory damages for non-pecuniary losses, including, but not limited to, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life;

  d. Order the Defendants to pay Nichole civil penal damages pursuant to 5 M.R.S. § 4613(2)(B)(7);

  e. Order the Defendants to pay Nichole her unpaid wages;

  f. Order the Defendants to pay all litigation costs and expert witness fees;

  g. Order the Defendants to pay Nichole nominal damages;

  h. Order the Defendants to pay pre-judgment, post-judgment interest, and reasonable attorneys' fees to Nichole;

  i. Grant Nichole such additional relief as this Court deems appropriate.

/s/ Rebecca S. Webber
_____
Rebecca S. Webber, Esq., Bar No. 7908
Attorney for Plaintiff Nichole Bailey
SKELTON TAINTOR & ABBOTT
95 Main Street
Auburn, ME 04210
(207) 784-3200
rwebber@sta-law.com

July 12, 2017